IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CINDY LAMB,

        Plaintiff,

                                 3:12-cv-01160-PK

                                 FINDINGS AND
       v.                             RECOMMENDATION

ACE CASH EXPRESS, INC.,

        Defendant.

---

PAPAK, Magistrate Judge:

      Plaintiff Cindy Lamb brings this action against defendant Ace Cash Express, Inc. ("Ace"),

her former employer, alleging that Ace violated Oregon law when it terminated her employment

after she disclosed confidential customer information to law enforcement in the process of

reporting possible child neglect. Now before the court is Lamb's motion for summary judgment

(#39). For the reasons set forth below, Lamb's motion for summary judgment should be denied

Page 1 - FINDINGS AND RECOMMENDATION

and summary judgment on Lamb's wrongful-discharge claim should be granted in favor of

nonmovant Ace.

## FACTUAL BACKGROUND[1]

I.    **Parties**

Ace is a "retail financial services provider" that offers services such as "check cashing,

title loans, money transfers, and prepaid debit cards." Declaration of Jason Petteway, #45, ¶ 2.

From approximately 2010 to January 30, 2012, Lamb was employed by Ace at its 82nd Avenue

store in Portland, Oregon.[2] Declaration of Cindy Lamb ("Lamb Decl."), #42, ¶¶ 4, 11.  As of July

1, 2011, Lamb's title was Customer Service Manager and her duties included, among other

things, assisting customers.  Ex. A, Declaration of John B. Dudrey ("Dudrey Decl."), #46-1, at 3;

Lamb Decl., #42, ¶ 5.

II.    **Ace's Confidentiality Policy**

Ace has a confidentiality policy that prohibits employees from disclosing confidential

information "except as approved and as required in the execution of employment."  Ex. A,

Dudrey Decl., #46-1, at 26.  Confidential information includes "any information provided by or

about customers."  *Id.*  The policy warns that disclosure of confidential information may result in

"disciplinary action up to and including termination."  *Id.*  While working at Ace, Lamb received

quarterly training, which included training on how to safeguard customer information.  Ex. C,

---

[1]  The following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Rule of Civil Procedure 56.

[2]  Lamb was previously employed by Oak Brook Financial, doing business as Cash Connection.  Declaration of Cindy Lamb ("Lamb Decl."), #42, ¶ 3.  In 2010, Ace purchased the Cash Connection store at which Lamb worked.  *Id.* ¶ 4.

Dudrey Decl., #46-3, at 3. As part of the training materials, Lamb was instructed that, if she was "contacted by a representative of a local, state or federal agency requesting customer information," she was to "direct the inquiry to ACE's General Counsel . . . [and] not provide any information to the inquirer." Ex. A, Dudrey Decl., #46-1, at 37.

### III.    Lamb's Termination

On January 23, 2012, Lamb was the only employee working at Ace's 82nd Avenue store. Ex. A, Dudrey Decl., #46-1, at 3, 12, 15. At approximately 6:00 p.m., a woman carrying a baby in a baby carrier came into the store to cash a check. *Id.* at 12; Lamb Decl., #42, ¶ 8. While Lamb helped the woman, Lamb could hear the baby screaming but could not see the baby. Ex. A, Dudrey Decl., #46-1, at 12-13; Lamb Decl., #42, ¶ 8. Lamb further noted that the woman was "flipping" a "baby binky" on the counter. Ex. A, Dudrey Decl., #46-1, at 13. As Lamb processed the check, she asked if the baby was "new" and the woman responded, "'Yes. She's just under five weeks.'" Ex. A, Dudrey Decl., #46-1, at 14. Lamb suggested that the woman pick up the baby and the woman responded, "'Oh, she's just tired because she hasn't had her 3 o'clock nap.'" *Id.* After Lamb finished cashing the check, she asked to see the baby. *Id.*; Lamb Decl., #42, ¶ 8. When the woman showed Lamb the baby, Lamb observed that the baby was "screaming" but had no tears, was "beet red," and "was straining her head." Ex. A, Dudrey Decl., #46-1, at 14; *accord* Lamb Decl., #42, ¶ 8. As the woman then turned and began leaving the store, Lamb observed that the baby went "dead quiet." Ex. A, Dudrey Decl., #46-1, at 14.

After the woman left, Lamb got ready to close the store. *Id.* at 15. Before she left the store, Lamb considered calling law enforcement to report what she perceived, based on her experience with children, to be child neglect. *Id.* at 15-16. That night, Lamb continued to think

Page 3 - FINDINGS AND RECOMMENDATION

about the baby and decided that she would contact law enforcement the next day. *Id.* at 16. On January 24, 2012, Lamb went into work and, before she opened the store at 10:00 a.m., she called the nonemergency dispatch number for the Clackamas County Sheriff's Department to report child neglect or abuse. *Id.* at 17; Lamb Decl., #42, ¶ 9. As part of her report, Lamb disclosed the customer's name, part of the customer's address, and possibly the customer's telephone number. *Id.* at 18-19. Lamb did not consider contacting Michelle Common, a district manager at Ace, Jason Petteway, the regional vice president at Ace, or Ace's legal department prior to making her report to law enforcement. *Id.* at 16.

On January 25, 2012, Common came to the 82nd Avenue store for a monthly audit. Lamb Decl., #42, ¶ 10. While at the store, Common told Lamb that the husband of the woman whom Lamb had reported had called Ace to complain about the report. *Id.*; *see also* Ex. B, Dudrey Decl., #46-2, at 5. Lamb "explained the circumstances of what [she] saw to . . . Common and said that [she] had called the police to report a crime." Lamb Decl., #42, ¶ 10.

On January 30, 2012, Lamb was working when Common returned to the store. Ex. A, Dudrey Decl., #46-1, at 21. Common told Lamb that she was terminated for violating company policy, which Lamb understood to mean the confidentiality policy.[3] *Id.* at 22; *see also* Lamb Decl., #42, ¶ 11.

## PROCEDURAL BACKGROUND

On June 28, 2012, Lamb filed the instant action, alleging a violation of Oregon Revised Statute Section 659A.199 ("ORS § 659A.199") and Oregon Revised Statute Section 659A.230

---

[3] At oral argument, Lamb's counsel noted that Ace later rehired Lamb and, as of the date of oral argument, Lamb was still working for Ace.

("ORS § 659A.230"), as well as a claim for wrongful discharge. On February 10, 2014, Lamb

filed a motion for summary judgment (#39), requesting that the court enter judgment in her favor

on the issues of whether Ace violated ORS §§ 659A.199 and 659A.230 and whether Lamb's

termination was a wrongful discharge. On March 6, 2014, Ace filed a resistance to the motion

for summary judgment (#44). On March 20, 2014, Lamb filed a reply in support of the motion

for summary judgment (#47). On April 2, 2014, the court heard oral argument on the motion. At

the hearing, the court gave the parties notice under Federal Rule of Civil Procedure 56(f) that it

intended to decide whether to grant summary judgment in favor of nonmovant Ace on Lamb's

wrongful-discharge claim on the ground that it was precluded by an adequate statutory remedy.

The court instructed the parties to submit additional briefing on the issue. On April 25, 2014,

Lamb submitted a supplemental brief (#51). That same date, Ace submitted its supplemental

brief (#52). The matter is fully submitted and ready for decision.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for

trial. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The substantive law governing a claim or defense determines whether a fact is material. *See*

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a

motion for summary judgment, the district courts of the United States must draw all reasonable

inferences in favor of the nonmoving party and may neither make credibility determinations nor

perform any weighing of the evidence. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990).

## DISCUSSION

### I.    Statutory Claims

Pursuant to ORS § 659A.199:

> It is an unlawful employment practice for an employer to
> discharge, demote, suspend or in any manner discriminate or
> retaliate against an employee with regard to promotion,
> compensation or other terms, conditions or privileges of
> employment for the reason that the employee has in good faith
> reported information that the employee believes is evidence of a
> violation of a state or federal law, rule or regulation.

ORS § 659A.199(1). Likewise, ORS § 659A.230 provides in relevant part that "[i]t is an

unlawful employment practice for an employer to discharge . . . an employee . . . for the reason

that the employee has in good faith reported criminal activity by any person." ORS §

659A.230(1). The courts of the District of Oregon use the *McDonnell Douglas* burden-shifting

framework when analyzing claims under ORS §§ 659A.199 and 659A.230. *See Larmanger v.*

*Kaiser Found. Health Plan of the Nw.*, 895 F. Supp. 2d 1033, 1049 (D. Or. 2012) (applying the

*McDonnell Douglas* burden-shifting framework to claims under ORS §§ 659A.199 and

659A.230); *see also Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069, 1102 (D. Or. 2012)

(noting that, although Oregon courts do not use the *McDonnell Douglas* burden-shifting

framework, it "is a procedural device, not a substantive rule"). Under the *McDonnell Douglas*

burden-shifting framework, the plaintiff has the initial burden to establish a prima facie case of

retaliation. *Id.* That is, the plaintiff must show she: "(1) engaged in a protected activity, (2)

Page 6 - FINDINGS AND RECOMMENDATION

suffered an adverse employment decision, and (3) there was a causal link between the protected

activity and the adverse employment decision." *Id.*; *accord Larmanger*, 895 F. Supp. 2d at 1049.

If the plaintiff is able to make such a showing, the burden then shifts to the defendant to offer a

legitimate, non-discriminatory reason for the adverse action. *Neighorn*, 870 F. Supp. 2d at 1102.

If the defendant is able to satisfy its burden, the burden shifts back to the plaintiff to produce

some evidence "that the defendant's explanation is merely a pretext for impermissible

retaliation." *Id.*

  In this case, Ace does not dispute that Lamb's termination was an adverse employment

decision. Ace, however, contends that summary judgment is not appropriate because Lamb's

report to law enforcement does not qualify as a protected activity and, even if it did, Lamb has

failed to show a causal connection between her protected activity and termination.

  **A.**  **Protected Activity**

  First, Ace argues that Lamb did not engage in a protected activity because, although a

good-faith report of a crime is generally a protected activity, Lamb's conduct in this case was

unreasonable. In support of its argument, Ace points to Title VII retaliation cases in which courts

found "that an employee who violates her employer's confidentiality policy does not engage in

protected activity." Ace's Resistance to Motion for Summary Judgment, #44, at 10. In this case,

Ace argues that a reasonable jury could conclude that Lamb's report is not a protected activity

because Lamb "violated [Ace's] confidentiality policies and failed to take advantage of its

procedures for obtaining authorization to disclose confidential information." *Id.* at 11. In

response, Lamb argues that the "language of ORS [§] 659A.199 and ORS [§] 659A.230 are plain

and devoid of any ambiguity: employers may not discriminate or retaliate against employees for

reporting perceived violations of state or federal law or for reporting criminal activity." Lamb's Reply in Support of Motion for Summary Judgment, #47, at 2. Thus, Lamb maintains that the court must find as a matter of law that she engaged in a protected activity.

For the reasons set forth in Lamb's reply, I find that Lamb engaged in a protected activity. The statutory language clearly sets forth what constitutes a protected activity—that is, reporting conduct that the employee believes in good faith constitutes a violation of state or federal law. Ace does not dispute that Lamb contacted law enforcement to report child neglect or that child neglect is a violation of state law. Nor does Ace dispute that Lamb had a good belief that what she observed was child neglect.[4] Thus, Lamb engaged in the precise activity protected by ORS §§ 659A.199 and 659A.230.

Ace's reliance on *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253 (4th Cir. 1998), and *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364 (5th Cir. 1998), is misplaced. Both of these cases addressed the "opposition," rather than "participation," clause of Title VII's anti-retaliation provision. *See Laughlin*, 149 F.3d at 259; *Douglas*, 144 F.3d at 373. Under Title VII, "[p]articipatory activities are vigorously protected" because such activities are "essential to the machinery set up by Title VII." *Laughlin*, 149 F.3d at 259 & n.4 (quoting *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)) (internal quotation

---

[4] I note that it is unnecessary for Lamb to prove that there was an *actual* violation of state or federal law. *See Neighorn*, 870 F. Supp. 2d at 1102 (noting that ORS § 659A.199 "requires only that the employee reports in good faith information that the *employee believes* is a violation of state or federal law, [and,] thus, the employee 'need not be objectively correct about the existence of a statutory violation to sufficiently state a prima facie claim of retaliation'" (quoting *Krouse v. Ply Gem Pac. Windows Corp.*, 803 F. Supp. 2d 1220, 1228 (D. Or. 2011))). Moreover, there is no requirement that Lamb's belief that she witnessed child neglect be objectively reasonable. *See id.*

marks omitted). The opposition clause, however, "serves a more limited purpose." *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978). Accordingly, the Ninth Circuit has held that the "opposition" clause requires that an employee's act of opposing discrimination be "legal" and "reasonable in view of the employer's interest in maintaining a harmonious and efficient operation." *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978) (citations omitted). Here, there is no basis from which to conclude that the Oregon legislature intended ORS § 659A.199 and ORS § 659A.230 to serve a limited purpose. If anything, these provisions are more analogous to the participation, rather than opposition, clause of Title VII's anti-retaliation provision. Accordingly, I find that the "balancing test" applied in *Laughlin* and *Douglas* does not apply in determining what constitutes protected activity under ORS § 659A.199 and ORS § 659A.230.

Thus, in light of the foregoing, I find that Lamb engaged in a protected activity.

**B.    Causal Connection**

Next, Ace argues that a reasonable jury could conclude that Lamb's report to law enforcement was not the cause of her termination but, rather, it was her violation of Ace's confidentiality policy that resulted in her termination. In support of its argument, Ace notes that, shortly after Lamb was terminated, another employee was terminated for violating Ace's confidentiality policy. Thus, Ace argues that it would have made the same decision to terminate Lamb for violating company policy even if she had not engaged in a protected activity. In response, Lamb argues that she would not have disclosed confidential information had she not made a report to law enforcement and, thus, "[t]he two issues cannot be separated." Lamb's Reply in Support of Motion for Summary Judgment, #47, at 9.

Page 9 - FINDINGS AND RECOMMENDATION

To establish the requisite causal link, a plaintiff must prove that his or her protected activity was a "substantial factor" in the employer's decision to discharge the plaintiff. *Larmanger*, 895 F. Supp. 2d at 1049 (quoting *Sandberg v. City of N. Plains*, No. 10-CV-1273-HZ, 2012 WL 602434, at *7 (D. Or. Feb. 22, 2012)) (internal quotation marks omitted). "Whether an employer who discharged an employee was motivated by an impermissible reason is a question of fact." *Huber v. Or. Dep't of Educ.*, 235 Or. App. 230, 240, 230 P.3d 937, 944 (Or. Ct. App. 2010).

Here, Lamb has failed to establish that there is no genuine issue of material fact with regard to Ace's reason for discharging her. Contrary to Lamb's suggestion, her violation of the confidentiality policy and her protected activity are two distinct issues. Ace has legitimate business reasons for requiring employees to refer requests for confidential information to Ace's general counsel, particularly given Ace's duty to safeguard confidential information under federal law. There is no evidence that Ace created its confidentiality policy to discourage employees from reporting crimes. Nor does the policy prohibit employees from reporting crimes; rather, it merely sets forth a procedure that an employee must follow in doing so. Thus, I find that a reasonable jury could conclude that Ace terminated Lamb's employment not because she reported a crime to law enforcement, but, rather, because she did not follow Ace's policy for disclosing confidential information.

Thus, in light of the foregoing, I find that there is a genuine issue of material fact as to whether there is a causal link between Lamb's protected activity and her termination and, consequently, summary judgment on Lamb's claims under ORS §§ 659A.199 and 659A.230 is not appropriate.

## II.    Wrongful-Discharge Claim

At oral argument, I advised the parties that I intended to decide whether to grant summary

judgment in Ace's favor on Lamb's third claim for relief—common-law wrongful discharge.  In

her supplemental memorandum on the issue, Lamb argues that summary judgment is not

appropriate because her wrongful-discharge claim is not precluded by ORS §§ 659A.199 and

659A.230.  Lamb contends that this court is bound to apply the Oregon Court of Appeals'

decision in *Olsen v. Deschutes County*, 204 Or. App. 7, 127 P.3d 655 (Or. Ct. App.), *petition for*

*review denied*, 341 Or. 80, 136 P.3d 1123 (Or. 2006).  In *Olsen,* the Oregon Court of Appeals

concluded that a statutory remedy precludes a common-law remedy only when two requirements

are satisfied: (1) the statutory remedy is adequate "in comparison to the remedy available under a

common-law tort action"; and (2) "the legislature intended the statute to abrogate the common

law." *Id.* at 14, 127 P.3d at 660.  As to the second requirement, the Oregon Court of Appeals

noted that legislative intent to abrogate the common-law remedy may be inferred where the

statute adopts "virtually all remedies that would have been available at common law." *Id.* at 16,

127 P.3d at 661 (quoting *Farrimond v. La.-Pac. Corp.*, 103 Or. App. 563, 567, 798 P.2d 697,

699 (Or. Ct. App. 1990)).  However, where the legislature has "clearly and affirmatively

expressed its intention that the statutory claim *not* supersede common-law claims," then the

second requirement is not satisfied and the common-law claim is not precluded. *Id.* at 16, 127

P.3d at 661.  In this case, Lamb notes that ORS § 659A.199 provides: "The remedies provided by

this chapter are in addition to any common law remedy or other remedy that may be available to

an employee for the conduct constituting a violation of this section." ORS § 659A.199(2).[5]  In

light of this statement of legislative intent, Lamb contends that the second *Olsen* requirement is

not satisfied.

Despite the clear language of legislative intent in ORS § 659A.199 and the identical

language in ORS § 659A.230, Ace argues that Lamb's wrongful-discharge claim is precluded

because these statutes provide adequate remedies.  Ace acknowledges that *Olsen* holds otherwise

but contends that this court need not follow *Olson* because, as many courts in this District have

recognized, there is clear and convincing evidence that the Oregon Supreme Court would not

adopt *Olson*'s "conjunctive" test.  That is, Ace argues that the Oregon Supreme Court would find

that a common-law wrongful-discharge claim is precluded if *either* an adequate statutory remedy

exists *or* the legislature has expressed its intent to make a statutory remedy exclusive, even if

inadequate in comparison to the remedy provided at common law.

"'In the absence of a pronouncement by the highest court of a state, the federal courts

must follow the decision of the intermediate appellate courts of the state unless there is

convincing evidence that the highest court of the state would decide differently.'"  *Briceno v.*

*Scribner*, 555 F.3d 1069, 1080 (9th Cir. 2009) (quoting *Owen ex rel. Owen v. United States*, 713

F.2d 1461, 1464 (9th Cir. 1983)); *accord Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995

(9th Cir. 2007); *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982) (noting that a federal court

_____

[5] Lamb argues only that her wrongful-discharge claim is not precluded by ORS § 659A.199 without addressing whether it might be precluded by ORS § 659A.230.  The two statutory provisions are very similar.  Like ORS § 659A.199, ORS § 659A.230 contains language indicating the legislature's intent not to displace common-law remedies.  *See* ORS § 659A.230(3) ("The remedies provided by this chapter are in addition to any common law remedy or other remedy that may be available to an employee for the conduct constituting a violation of this section.").

Page 12 - FINDINGS AND RECOMMENDATION

should follow a state intermediate appellate court decision "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise" (citation omitted) (internal quotation mark omitted)).  A federal court's mere disagreement with the state intermediate appellate court decision is an insufficient basis for not following the decision. *Ryman*, 505 F.3d at 995.  Rather, the federal court must cite convincing evidence that the state supreme court would have decided the issue differently.  *Id.*

As Ace notes in its supplemental memorandum, several courts in this District have concluded that there is convincing evidence that the Oregon Supreme Court would not adopt *Olsen*'s conjunctive test.  *See, e.g., Shapiro v. Am. Bank [FSB]*, No. 3:12-cv-1358-AC, 2013 WL 6157266, at *8 (D. Or. Nov. 21, 2013); *Neighorn*, 870 F. Supp. 2d at 1106-07; *Duran v. Window Prods., Inc.*, No. CV-10-125-ST, 2010 WL 6420572, at *4-5 (D. Or. Dec. 22, 2010), *adopted by* 2011 WL 1261190 (D. Or. Mar. 29, 2011); *Reid v. Evergreen Aviation Ground Logistics Enters. Inc.*, Civil No. 07-1641-AC, 2009 WL 136019, at *16-20 (D. Or. Jan. 20, 2009).  For instance, in *Reid*, United States Magistrate Judge John V. Acosta conducted a thorough analysis of the issue, finding that *Olsen*'s conjunctive test was inconsistent with the wrongful-discharge tort's "original construct, 'to fill a remedial gap where a discharge would be left unvindicated,' and its original purpose 'to serve as a narrow exception to the at-will employment doctrine in certain limited circumstances where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct.'"  *Reid*, 2009 WL 136019, at *18 (citations omitted).  Judge Acosta further found that *Olsen*'s conjunctive test was inconsistent with Oregon Supreme Court precedent, including the Oregon Supreme Court's decision in *Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 563 P.2d 1205 (Or. 1977).

Finally, Judge Acosta noted that, in a pre-*Olsen* unpublished decision, the Ninth Circuit affirmed the district court's conclusion that the plaintiff's wrongful-discharge claim was precluded by an adequate statutory remedy, noting that, although there are inconsistencies in the Oregon case law, *Walsh* has not been overturned. *Reid*, 2009 WL 136019, at *19-20 (discussing *Ransom v. HBE Corp.*, 73 F. App'x 919, 920 (9th Cir. 2003)). For these reasons, Judge Acosta declined to follow *Olsen*, joining other courts in this District in finding that an adequate statutory remedy alone, irrespective of legislative intent, precludes a common-law claim for wrongful discharge. *Reid*, 2009 WL 136019, at *20.

After reviewing the parties' supplemental memorandums and the relevant Oregon case law, I agree with Ace that Lamb's wrongful-discharge claim is precluded by ORS §§ 659A.199 and 659A.230. I reach this conclusion largely on the basis of the Oregon Supreme Court's decisions in *Walsh* and *Delaney v. Taco Time International, Inc.*, 297 Or. 10, 681 P.2d 114 (Or. 1984) (en banc). First, in *Walsh*, the Oregon Supreme Court was faced with the question of whether an employee who was allegedly discharged for reporting safety violations in the workplace could bring a claim for common-law wrongful discharge even though there was a federal statute under which the employee could seek vindication. *Walsh*, 278 Or. at 351-52, 563 P.2d at 1208. The *Walsh* court found that, because the existing remedy was "adequate to protect both the interests of society in maintaining safe working conditions and the interests of employees who are discharged for complaining about safety and health problems," it was "unnecessary to extend an additional tort remedy to cover this kind of situation." *Id.* at 352, 563 P.2d at 1208-09. Notably absent from *Walsh*'s analysis is any mention of whether Congress intended to abrogate common-law remedies in passing the applicable federal statute.

Second, I am guided by the Oregon Supreme Court's decision in *Delaney*, in which the court attempted to synthesize its case law on wrongful-discharge claims. *Delaney*, 297 Or. at 15-16, 681 P.2d at 117-18. The Oregon Supreme Court found that its decisions fell "into three general categories." *Id.* at 15, 681 P.2d at 117. In the first category of cases, exemplified by *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (Or. 1975), an employee may bring a common-law claim for wrongful discharge where he or she "was discharged for fulfilling a societal obligation." *Delaney*, 297 Or. at 15, 681 P.2d at 117. In the second category of cases, as exemplified by *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087 (Or. 1978), an employee may bring a common-law claim for wrongful discharge where he or she "is discharged while pursuing a right related to his [or her] role as an employee and the right is one of important public interest indicated by constitutional and statutory provisions and caselaw." *Delaney*, 297 Or. at 16, 681 P.2d at 118. Finally, in the third category of cases, as exemplified by *Walsh*, an employee may not bring a common-law claim for wrongful discharge "where an adequate existing remedy protects the interests of society." *Id.* at 16, 681 P.2d at 118.

In light of these cases, I am not persuaded that *Olsen*'s conjunctive test is applicable here. In *Olsen*, the Oregon Court of Appeals cited *Holien v. Sears, Roebuck & Co.*, 298 Or. 76, 689 P.2d 1292 (Or. 1984) (en banc), in support of its articulation of the conjunctive test. *Olsen*, 204 Or. App. at 14, 127 P.3d at 660. *Holien*, however, merely spoke to the second category of cases identified in *Delaney*—that is, those cases where an employee is pursuing a right related to his or her role as an employee and the right reflects an important public interest. *Holien*, 298 Or. at 90-91, 689 P.2d at 1300 (noting that the case fell into the second category of cases identified in *Delaney*). *Holien* left undisturbed the Oregon Supreme Court's holding in *Walsh*.

Page 15 - FINDINGS AND RECOMMENDATION

Turning to the facts of this case, Lamb was not pursuing a right related to her role as an employee when she reported possible child abuse or neglect to law enforcement. This case, therefore, does not appear to fall into the second category of cases discussed in *Delaney*. Consequently, *Holien*, the case on which *Olsen* relied, is inapplicable. Rather, it would appear that this case falls into *Delaney*'s third category of cases, exemplified by *Walsh*. As in *Walsh*, the statutes at issue here—ORS §§ 659A.199 and 659A.230—provide an adequate remedy, a point that Lamb does not dispute. *See Shaprio*, 2013 WL 6157266, at *8 (finding that the plaintiff's wrongful-discharge claim was precluded because ORS §§ 659A.199 and 659A.230 provided adequate remedies); *Duran*, 2010 WL 6420572, at *5 (finding that ORS § 659A.199 provides an adequate remedy because it "allows recovery of the same damages that are available to [the plaintiff] if she prevails on her wrongful discharge claim and also allows an award of attorney fees"). Although the Oregon legislature has expressed its intent that ORS §§ 659A.199 and 659A.230 not displace common-law remedies, the only relevant inquiry under *Walsh* is whether Lamb has an adequate statutory remedy, and I conclude that she does.

The courts in this District have recognized "the difficulty in harmonizing the Oregon Supreme Court's and the Oregon Court of Appeals' numerous decisions in the years that followed the [Oregon Supreme Court's] creation of the tort" of wrongful discharge. *Reid*, 2009 WL 136019, at *16. This difficulty will persist until the Oregon Supreme Court speaks on the issue. Until it does, I am left with the task of attempting to reconcile the various cases on point. For the reasons discussed above, I find that there is clear and convincing evidence that the Oregon Supreme Court would disagree with *Olsen*, at least to the extent it conflicts with *Walsh*. Because this case is governed by *Walsh*, I find that Lamb's wrongful-discharge claim is precluded by ORS

Page 16 - FINDINGS AND RECOMMENDATION

§§ 659A.199 and 659A.230 and, accordingly, summary judgment on this claim should be granted in favor of Ace.

## CONCLUSION

In light of the foregoing, Lamb's motion for summary judgment (#39) should be denied and, pursuant to Federal Rule of Civil Procedure 56(f), summary judgment on Lamb's wrongful-discharge claim should be granted in favor of nonmovant Ace.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 1st day of July, 2014.

Honorable Paul Papak
United States Magistrate Judge